**UNITED STATES of America,
Appellee,**

**v.**

**Joseph RINALDI, Defendant-Appellant.**

**No. 295, Docket 31812.**

United States Court of Appeals
Second Circuit.

Argued Jan. 23, 1968.

Decided April 19, 1968.

Terry F. Lenzner, Asst. U. S. Atty., New York City (Robert G. Morvillo, Asst. U. S. Atty., and Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, New York City, on the brief), for appellee.

Emma Alden Rothblatt, New York City (Henry B. Rothblatt, New York City, on the brief), for defendant-appellant.

Before MEDINA, MOORE and ANDERSON, Circuit Judges.

MEDINA, Circuit Judge:

In connection with an attempt to procure a first preference visa for an Italian immigrant named Giovanni Caccavale, Joseph Rinaldi, a New York Notary Public, entered upon a course of conduct that led to his indictment for making false statements to the Immigration and Naturalization Service, in violation of 18 U.S.C., Sections 1001, 1002. He now appeals from a judgment of conviction on six of the seven counts contained in the indictment, having been sentenced to imprisonment for one year on each of the six counts, to run concurrently. He is at present enlarged on $5000 bail. Appellant seeks a reversal of the judgment because of allegedly erroneous rulings on the admissibility of evidence, because

certain questions and comments of the trial judge are said to have deprived him of a fair trial, and because of the denial of his motion to dismiss count 2 for failure of the Government to establish that the false statement therein alleged was "material." We find no merit in any of these contentions and affirm the judgment of conviction.

On the basis of the testimonial and documentary proofs and inferences fairly to be drawn therefrom the jury would have been justified in finding the following scheme to have been concocted and carried out by Rinaldi, acting at least to some extent with a lawyer named Thomas P. Lentini, with whom Rinaldi had a somewhat dubious connection. Having ascertained that Caccavale wished to come with his family to the United States, Rinaldi decided that the way to accomplish this purpose was to represent Caccavale as a man with special skills in short supply in the United States and thus procure for him a first preference visa. The first step was to obtain certificates from the employer of Caccavale in Italy and a statement of his war record. When these documents, all written in the Italian language, arrived, Rinaldi, one of whose principal occupations was that of translating and interpreting from Italian into English, should have immediately known that it was highly improbable that Caccavale would qualify for a first preference visa. Despite this Rinaldi proceeded to find a "sponsor," that is to say someone who would agree to employ Caccavale to do the type of work required to qualify him for the visa. On the recommendation of a friend Rinaldi approached Nicholas DeGruccio, who owned an automobile machine shop in Maspeth, Long Island, New York. DeGruccio said he could use a mechanic's helper, but all he could afford to pay was $50 a week. Rinaldi promptly agreed to make up any difference in salary out of his own pocket.

Without the knowledge of DeGruccio appellant proceeded to have stationery printed, under the description of "Nick's Auto Machine Shop, 61–01 Eliot Avenue, Maspeth, N. Y.," for the purpose of applying in the regular way to the New York State Department of Labor for a clearance order. With the stationery in hand Rinaldi then composed a letter stating that Caccavale: "Will be required to setup and operate electric engine lathe, boring bar, drum cutter, and drill press. Able to use micrometer to tolerance of .002 of an inch." This was made up out of whole cloth, according to DeGruccio as he had no electric engine lathe or drill press, but Rinaldi signed DeGruccio's name to the letter, without DeGruccio's knowledge or consent. The letter was sent and the clearance order arrived in due course. The specified salary was, of course, for more than DeGruccio had told Rinaldi he could pay.

With the clearance order in hand, Rinaldi then filled out the prescribed form of petition to be filed with the Immigration and Naturalization Service, containing answers to the questions printed in the form. With this petition Rinaldi filed the documents in Italian, to which we have already referred, together with what purported to be correct and true translations in English. DeGruccio did not see this petition. As in the case of the letter to the New York State Department of Labor, Rinaldi signed DeGruccio's name, again without his knowledge or consent. In addition, Rinaldi, as Notary Public, signed the statement, below what purported to be the signature of DeGruccio, stating falsely that DeGruccio "had subscribed and sworn to" the petition before him on February 4, 1964. To make the misrepresentation complete Rinaldi signed the name of Thomas P. Lentini, the lawyer, to a statement that was part of the required form of petition, to the effect that Lentini had prepared the petition "at the request of the petitioner," although Rinaldi knew that he and not Lentini had prepared the petition and that DeGruccio not only had not requested the preparation of the petition but in fact knew nothing about it. While the notice of appearance was also written out

by Rinaldi and he signed Lentini's name to it, there is some question as to whether or not Lentini authorized this, perhaps on a *nunc pro tunc* basis.

So the day of the hearing arrived. Rinaldi and Lentini picked up DeGruccio at his shop and the three drove together to the office of the Immigration and Naturalization Service in Manhattan. We need not pause to recount DeGruccio's version of the conversation in the car and in the anteroom. The general effect is that he was told to give false answers to various questions the hearing examiner might be expected to ask. DeGruccio and Lentini then went into the hearing room, leaving Rinaldi in the anteroom.

It was soon apparent to the hearing examiner that something was wrong. The lawyer Lentini insisted on answering the questions and it was not long before the hearing examiner took a look at the translation Rinaldi had prepared of the employer's certificate concerning the work Caccavale had done for him in Italy. The key words in the certificate are: "ed é attualmente addetto alle seghe per segare i marmi." This Rinaldi had translated as "very adept in the making of parts and tools." What attracted the attention of the hearing examiner was the word "marmi," meaning marble. There was nothing about marble in the translation. So, one thing led to another, and it became apparent that the whole thing was a hoax. The true and correct translation is that Caccavale "is at present occupied with saws and sawing marble," very different from "very adept in the making of parts and tools." Perhaps the similarity of the Italian words "addetto" and "adetto" or "adepto" suggested to Rinaldi the making of the false and misleading translation. Indeed, there is no reference whatever in any part of the Italian certificate to the making of any parts and tools. The result was that

the petition was immediately withdrawn and this prosecution followed.

Against this factual background the law points may be disposed of in a few words. The testimony concerning what was said in the hearing room in the absence of Rinaldi was properly received as Lentini and Rinaldi were engaged in an illegal joint enterprise, which makes statements by any member of the venture admissible against the others and each of them, whether or not a conspiracy is charged. See United States v. Messina, 388 F.2d 393 (2d Cir. 1968); United States v. Jones, 374 F.2d 414 (2d Cir. 1967); United States v. Annunziato, 293 F.2d 373 (2d Cir.), cert. denied 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961). The trial was conducted with scrupulous fairness to the prosecution and the defense alike. We find absolutely nothing in the comments or questions of Judge Cooper to warrant the charge that he was "an overt ally" of the Government. The contention that he was prejudiced is wholly without foundation and frivolous.

As to the question of materiality, Section 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

We recognize that other circuits have held that materiality must be read into all the provisions of Section 1001.[1] However, the statute is clearly written in

---

1. United States v. Zambito, 315 F.2d 266 (4th Cir.), cert. denied 373 U.S. 924, 83 S.Ct. 1524, 10 L.Ed.2d 423 (1963); Paritem Singh Poonian v. United States, 294 F.2d 74 (9th Cir. 1961); Gonzales v.

United States, 286 F.2d 118 (10th Cir. 1960), cert. denied 365 U.S. 878, 81 S. Ct. 1028, 6 L.Ed.2d 190 (1961); Freidus v. United States, 96 U.S.App.D.C. 133, 223 F.2d 598 (1955); Rolland v. United

the disjunctive and we have held that the prosecution is not obliged to prove the materiality of "false statements" alleged to have been made in violation of that section. See United States v. Marchisio, 344 F.2d 653 (2d Cir. 1965); United States v. Silver, 235 F.2d 375 (2d Cir.), cert. denied 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 80 (1956). Moreover, we think the false statement cited in count 2—the average number of employees in Nick's Auto Shop—was material to the issue of whether a first preference visa should be made available to one whose skill is in short supply in this country.

Affirmed.

States, 200 F.2d 678 (5th Cir.), cert. denied 345 U.S. 964, 73 S.Ct. 950, 97 L.Ed. 1383 (1953).