16 F.3d 1223
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Billy TONGO, Defendant-Appellant.
 No. 93-5326.
 United States Court of Appeals, Sixth Circuit.
 Feb. 7, 1994.
 
 Before: BOGGS and NORRIS, Circuit Judges; and BELL, District Judge.*
 PER CURIAM.
 
 
 1
 Billy Tongo was convicted in federal district court on sixteen counts, involving fraudulently procuring United States citizenship; lying to obtain an American passport; fraudulently obtaining federally backed student loans; lying to a financial institution backed by the Federal Deposit Insurance Corporation (FDIC); and fraudulently obtaining housing subsidies by lying to the United States Department of Housing and Urban Development (HUD). He appeals from the sentence he received for his crimes: two consecutive two-year prison terms, totaling 48 months. For the reasons set forth below, we affirm.
 
 
 2
 * Tongo, a native of Nigeria, entered the United States in 1981 on a student visa.[1] The Immigration and Naturalization Service (INS) had approved his application to attend college in Macomb, Illinois. He never went to Illinois; rather, he headed straight for Tennessee. From the fall term of 1982 until May 1986, Tongo attended Tennessee State University in Nashville, where he earned a bachelor's degree in business administration (B.B.A.). For working capital to finance his education, he applied for and received federally guaranteed student loans, issued by Citibank, an FDIC-backed banking institution. Such student loans, by statute, are available only to United States citizens and lawful permanent residents (LPRs).
 
 
 3
 To qualify as an LPR, Tongo entered into a sham marriage[2] with an American citizen, Carla Yvette Tuggle, in January 1983,[3] and he fraudulently procured LPR status through that ruse. After finishing college, Tongo attended Middle Tennessee State University from January 1987 to August 1989, where he obtained a master's degree in economics. He continued to obtain federal student loans from Citibank on the basis of his fraudulently-obtained permanent residency. In all, from 1983 to 1989, Tongo obtained close to $20,000 in such loans. Moreover, he began obtaining housing subventions from HUD by asserting his fraudulent permanent residency, by amplifying his requests with fraudulent claims that he had dependents to support, and by falsely understating his total outside income. Between 1986 to 1992, he received over $24,000 in such federal housing assistance.
 
 
 4
 In March 1989, Tongo was arrested by the Nashville police while soliciting a street prostitute. In Nashville, that charge is designated a misdemeanor. When the police asked him for identification, he presented a Tennessee driver's license with the name Tongo Olumide Koyejo. The name, the birthdate, and the social security number on the license all differed from Tongo's INS identification records.
 
 
 5
 Two months after the prostitution citation, Tongo petitioned the INS for citizenship. As part of the formal naturalization petition process, Tongo was interviewed by John Cook, the INS senior immigration examiner in Memphis. Cook asked whether Tongo had ever used any other name; he replied negatively. Furthermore, Tongo responded in the negative to the standard question of whether he had ever procured anyone for prostitution. He affirmed that his spouse, Carla, was still living with him. Having answered all of his interviewer's questions with the right answers, Tongo was recommended for citizenship, and he was naturalized in December 1989.
 
 
 6
 Sometime after he obtained citizenship, the INS began investigating the circumstances under which Tongo had been approved for naturalization in 1989.[4] In June 1992, INS agents arrested him at his place of employment. At that time, the agents asked him whether he wanted them to remove anything from his car, which was parked at the work site. He asked them to retrieve his driver's license, which was in the trunk. When they told him that they would do so and would inspect the document first, before handing it to him, he told the agents that, on second thought, he would rather that they not remove his license from his trunk. The INS officer, Agent Evans, honored Tongo's request. Afterwards, based on Tongo's suspicious behavior, Evans checked Tennessee state records and learned that no driver's license had ever been issued to a Billy Tongo. However, a Tongo Koyejo had received a driver's license, had received citations for traffic violations that involved the Tongo automobile, and had been arrested for soliciting a prostitute. With this new information, Evans obtained a warrant to search the vehicle. While executing the search warrant, the agent discovered various documents in the vehicle that related to Tongo's fraudulent applications for federal student loans.
 
 
 7
 INS Agent Evans also advised HUD that information revealed that Tongo may have fraudulently obtained Section 8 rent subsidies from the agency during a period when he was employed full-time at the Tennessee Mental Health Institute in Nashville. At the time, Tongo was paid $1,234 monthly as a psychiatric technician, and he was earning approximately $20,000 more than his annual base salary by working substantial overtime. A subsequent investigation revealed that Tongo had qualified for, and obtained, HUD subventions based on false statements regarding his income, his marital status, the number of his dependents, and his status in this country.
 
 
 8
 Tongo was charged with: (1) claiming a false social security number in order to conceal his identity during a criminal arrest; (2) making a false statement under oath in a matter relating to naturalization by denying that he had ever been arrested for a criminal offense; (3) making a false statement under oath in a matter relating to naturalization by denying that he had ever used another name; and (4) fraudulently obtaining citizenship. The indictment was superseded when the Government learned of his efforts to obtain a passport fraudulently (count 5) and of the student-loan fraud that he had been perpetrating between 1983 and 1989 (counts 6-10). The indictment was superseded again when his HUD fraud came to light, culminating in an eighteen-count second superseding indictment. He was convicted by a jury on counts 3-18.
 
 
 9
 For his convictions on counts 6 and 9-18, involving his fraudulently procuring numerous student loans and housing subsidies, Tongo was assigned a base offense level of six. U.S.S.G. Secs. 2F1.1(a), 3D1.2(d). A five-level enhancement was added because the loss involved was more than $40,000 but less than $70,000. Id. Sec. 2F1.1(b)(1)(F). Because Tongo's scheme required more than minimal planning and entailed the defrauding of more than one victim, an additional two-level enhancement was imposed. Id. Sec. 2F1.1(b)(2)(A), (B). Finally, because he lied about his finances when he applied to the magistrate judge for court-appointed counsel, his offense level was increased by two for attempting to impede or obstruct justice. Id. Sec. 3C1.1. As a result of the various sentencing enhancements, Tongo's adjusted offense level was set at fifteen for the offense group of Counts 6 and 9-18. Because he had been convicted on other criminal counts as well, involving fraudulent procuring of citizenship and a passport, his total offense level was revised upward by two more levels, pursuant to the multiple-count adjustment. Id. Sec. 3D1.4. With an offense level of seventeen and a criminal history category of I, Tongo's guideline range for counts 3-6 and 9-18 was 24-30 months. Accordingly, the district judge sentenced Tongo to 24 months for the combination of those offenses.
 
 
 10
 Unfortunately for Tongo, counts 7 and 8, fraudulently obtaining federal student loans from an FDIC-backed institution, involved activities before the United States Sentencing Guidelines took effect. Therefore, those counts were excluded from the guideline sentencing process, and Tongo received concurrent 24-month sentences for each of those two counts, but consecutive to the twenty-four-month guideline sentence.[5]
 
 
 11
 Tongo appeals from his convictions on counts 3 and 4 of the second superseding indictment and from the court's decision to impose a separate prison sentence for the convictions on counts 7 and 8 that will run consecutive to the sentence imposed for the convictions on counts 3-6 and 9-18.
 
 II
 
 12
 Whoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens ... [s]hall be fined ... or imprisoned ... or both.
 
 
 13
 18 U.S.C. Sec. 1015(a). Tongo argues that this law punishes only material misrepresentations, not minor lies. Consequently, he maintains that he was wrongly convicted on counts 3 and 4.
 
 
 14
 Tongo cites Kungys v. United States, 485 U.S. 759 (1988), in which the Court held that a naturalized citizen could be denaturalized for having lied during his citizenship-application process only if his lies could be shown by clear, unequivocal, and convincing evidence to have been "material." A lie meets the "materiality" test if it has a natural tendency to influence the decision of INS regarding whether to approve an application for citizenship. Id. at 771-72. Tongo adds that other American laws that incriminate lying, such as the perjury laws, also limit punishments exclusively to lies regarding "any material matter which [the declarant] does not believe to be true." 18 U.S.C. Sec. 1621 (emphasis added). Therefore, he maintains that the trial judge erred when he instructed the jury that "[i]t is not necessary [for the Government] to prove that the [immigration] official involved was, in fact, influenced or misled [by the lie]. What must be proven is that the defendant intended to make the false statement."
 
 
 15
 We reject Tongo's legal argument. Kungys dealt with a different statute, INA Sec. 340(a), codified at 8 U.S.C. Sec. 1451(a):
 
 
 16
 It shall be the duty of the United States attorneys ... to institute proceedings ... for the purpose of revoking ... citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material act....
 
 
 17
 (Emphasis added.) In that statute, there is a clear reference to materiality, so materiality is required. By contrast, Tongo was indicted under 18 U.S.C. Sec. 1015(a), and that statute does not include a materiality requirement. Indeed, Tongo's argument misstates the Kungys holding, in which the Court also held:
 
 
 18
 [W]e address ... whether Sec. 1101(f)(6) contains a materiality requirement for false testimony. We hold that it does not.
 
 
 19
 Under 8 U.S.C. Sec. 1101(f)(6), a person shall be deemed not to be of good moral character if he "has given false testimony for the purpose of obtaining" immigration or naturalization benefits.... Literally read, it denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits. We think it means precisely what it says.
 
 
 20
 ....
 
 
 21
 [I]t is clear that the Third Circuit erred in importing a materiality requirement into Sec. 1101(f)(6).
 
 
 22
 Id. at 779-80, 782 (emphasis added). A plain reading of the statute under which Tongo was indicted similarly leaves no room for error: "Whoever knowingly makes any false statement...." 18 U.S.C. Sec. 1015(a) (emphasis added). There is no reference in the statutory text to materiality. Indeed, the very fact that the law spells out a materiality requirement in connection with the general perjury laws, Id. Sec. 1621, shows that if Congress wants to add a materiality component to a law, it will do so. Congress did not spell out such a requirement in section 1015(a).
 
 
 23
 Furthermore, we do not agree with Tongo's underlying presumption, that it was immaterial to his citizenship interview with INS Agent Cook whether he had used other names in the past.
 
 
 24
 Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person ... [s]hall be fined ... or imprisoned ... or both.
 
 
 25
 18 U.S.C. Sec. 1425(a). If Billy Tongo had told INS Agent Cook the truth about his use of the other name, Tongo Olumide Koyejo, the agent would have uncovered Tongo's prior arrest for soliciting a prostitute. Cook testified that, if he had known of Tongo's prostitution arrest, or if he had known that Carla Tuggle had been paid to help Tongo obtain immigration benefits, or if he had known that Tongo had deceived him regarding whether he had ever before been arrested, he would have recommended against his naturalization. It was Cook's experience that courts tended to follow his recommendations as a matter of course. He further testified on cross-examination that an applicant for citizenship who lies during his petition and interview process can be disqualified from naturalization even when the falsification relates to a matter that is not material to the application. Therefore, we reject Tongo's appeal from his conviction on counts 3 and 4 of the second superseding indictment.
 
 III
 
 26
 Tongo next claims that the district court erred when it ordered that his sentence for his pre-guidelines violations under counts 7 and 8 would run consecutive to his two-year guideline sentence.
 
 
 27
 The presentencing report had clearly set forth that counts 7 and 8 would be treated separately as pre-guidelines crimes. However, Tongo failed to challenge that decision in district court even though he strenuously challenged many other aspects of the report. Furthermore, he failed to raise any objection when the district court imposed the non-guidelines concurrent sentences to run consecutive to the guidelines sentence. Therefore, having failed to raise the question in district court, Tongo has waived the right to appeal it here.[6]
 
 
 28
 Furthermore, many of our sister circuits have observed that "[n]othing in the guidelines or the Sentencing Reform Act expressly preclude[s] the district court from requiring that [Tongo] serve his non-guidelines sentence consecutively to his guidelines sentence." United States v. Scarano, 975 F.2d 580, 586 (9th Cir.1992) (citing United States v. Watford, 894 F.2d 665, 669 (4th Cir.1990)); United States v. Garcia, 903 F.2d 1022, 1024-26 (5th Cir.), cert. denied, 498 U.S. 948 (1990).
 
 
 29
 Nevertheless, Tongo argues that he has suffered prejudice from "double-counting" because: (1) the concurrent sentences for counts 7 and 8 were imposed to run consecutive to his guidelines sentence, and (2) the $9,250 fraud attributable to counts 7 and 8 was calculated together with the fraud attributable to counts 6 and 9-18, resulting in a sentencing enhancement of five offense levels. However, we observe that the five-level enhancement under U.S.S.G. Sec. 2F1.1(b)(1)(F) applies to losses that are more than $40,000 but less than $70,000. The fraud that Tongo perpetrated under counts 6 and 9-18 resulted in losses of $44,652. Consequently, even without his convictions on counts 7 and 8, the amount of his fraud justified the five-level enhancement. Therefore, he has no basis to raise a "double counting" claim.
 
 IV
 
 30
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Student visas are granted under section 101(a)(15)(F) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. Sec. 1101(a)(15)(F). These "F-1" visas require the student to have no intention of abandoning his foreign country and to arrive here solely for the purpose of pursuing a full course of study. The student must designate the school where he intends to study, and the Attorney-General approves the selection after consulting with the Secretary of Education. The school itself must also file assurances that it will promptly report the student's termination of attendance
 To receive an F-1 visa, the foreign student must demonstrate sufficient funds to support himself. If the consular officer at the time of the student's visa application, or the Attorney-General at the time of the student's application for admission into the United States, believes that the alien is likely to become a public charge, he may be excluded from entry. INA Sec. 212(a)(4), codified at 8 U.S.C. Sec. 1182(a)(4). Foreign students are severely restricted in terms of the number of hours that they may work. See 8 C.F.R. Sec. 214.2(f)(9) (1990).
 
 
 [2]
 "Sham marriage" is a term of art in immigration law. The major laws regarding marriage fraud are codified at 8 U.S.C. 1186a
 
 
 [3]
 Tuggle testified that the two never lived together and that she had consented to the scheme because Tongo's cousin had offered her between $500 and $800 to help him obtain LPR status
 
 
 [4]
 It is not clear from the Record what prompted the INS to begin investigating Tongo's citizenship application. However, it is clear that the INS had not yet linked him to the fraudulent obtaining of student loans and housing subventions because the four-count indictment of June 24, 1992, which accused him of procuring citizenship fraudulently, focused on his dishonest statements to Agent Cook that he had never before been arrested and had not previously used a different name. From the text of the original indictment, it seems that the INS had learned of the prostitution arrest and had pursued that matter
 
 
 [5]
 Tongo was also ordered to pay restitution of $14,981.12 to Citibank and $18,186 to the United States Government. Finally, the court revoked his citizenship and ordered his deportation upon conclusion of his prison term
 
 
 [6]
 In a similar vein, Tongo contends that count 6, relating to his having obtained student loans fraudulently, merely duplicates the crimes being punished by his convictions on counts 7-10. Therefore, he claims that charges raised against him on count 6 constitute double jeopardy
 However, once again, Tongo waived the right to raise such an issue on appeal by failing to raise it initially in district court. Tongo should have filed a motion in district court to dismiss the counts under Federal Rule of Criminal Procedure 12(b)(2):
 The following must be raised prior to trial:
 ....
 (2) Defenses and objections based on defects in the indictment....
 In any event, count 6 was grouped with counts 9-18, so no additional sentence resulted from Tongo's conviction on that charge.