45 F.3d 428
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Andre HUGGINS, Defendant-Appellant.
 No. 94-5028.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Oct. 4, 1994.
Decided: Dec. 22, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CR-93-61)
 Dannie R. Sutton, Jr., Richmond, VA, for Appellant. Helen F. Fahey, United States Attorney, N. G. Metcalf, Assistant United States Attorney, Richmond, VA, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, MURNAGHAN, and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Michael Huggins appeals his conviction following a jury trial of providing contraband to an inmate in violation of 18 U.S.C.A. Sec. 1791 (West Supp.1994). Huggins alleges that the trial court improperly admitted certain evidence and that there was insufficient evidence to convict him. We affirm.
 
 
 2
 The facts are largely undisputed. On September 20, 1992, Huggins, along with Angela Dorsey and her infant child, visited Jeffrey Rawlings, a prisoner at the Federal Correctional Institute in Petersburg, Virginia.[1]
 
 
 3
 When they arrived at the prison, Huggins and Dorsey presented identification to the front desk officer and signed an inmate visiting log. Huggins and Dorsey also signed a notification paper in which they listed their addresses and telephone numbers. The notification card warned each visitor that introduction of drugs, narcotics, and other contraband at the prison was prohibited. Upon signing the notification card, Huggins and Dorsey were led into the facility.
 
 
 4
 Huggins, Dorsey and the child then entered a large visiting room to have contact with Rawlings.[2] Rawlings's first contact came when he embraced Dorsey. His second contact came when his daughter sat on his lap. It is unclear whether Rawlings shook hands with Huggins.
 
 
 5
 During the September 20th visit, approximately one hundred people were present in the visiting room, including three correctional officers. However, no correctional officer, camera or Government witness observed Huggins make any physical contact with Rawlings.
 
 
 6
 Following the contact visit, Rawlings was subjected to a routine strip search. In the course of the strip search, correctional officers recovered a plastic packet containing 0.195 grams of 87% pure heroin from Rawlings's rectum.
 
 
 7
 Prior to the September 20th visit, Rawlings made several telephone calls to Dorsey and others from a prison telephone. Each conversation was taped by a recording device employed by the prison. Inmates are aware that their calls are subject to monitoring and tape recording.
 
 
 8
 The Government's evidence showed that Rawlings made four phone calls to Dorsey the day before the September 20th visit. First, Rawlings told Dorsey that Huggins would contact her. Next, Rawlings asked a man to inform Huggins "not to cut it." The third call was a discussion concerning the going rate of "it" and assurances of how to gift wrap "it." The fourth call was a direct call from Rawlings to Huggins wherein Rawlings asked Huggins to confirm with Dorsey that they were still coming to visit the next day.
 
 
 9
 On September 22, two days after the visit, Rawlings again called Huggins. During this call, Rawlings told Huggins that he had been locked up based on the previous visit. Rawlings inquired whether anyone had contacted Huggins's house. Rawlings then advised Huggins to be "cool," not get "panicky," and act as if he knew nothing.
 
 
 10
 Huggins's first assignment of error on appeal is the district court's decision to admit the taped phone conversations into evidence. However, a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy is admissible against a defendant as an admission by a party-opponent. Fed.R.Evid. 801(d)(2)(E). Before admitting a co-conspirator's statement under Rule 801(d)(2)(E), the trial court must decide whether the statement falls within the rule. That inquiry may be satisfied if a preponderance of the evidence shows that there was a conspiracy involving the declarant and the non-offering party. Bourjaily v. United States, 483 U.S. 171, 175 (1987). A trial court may consider evidence relating to events subsequent to a declaration in deciding whether sufficient evidence of a conspiracy exists. See United States v. Silvano, 812 F.2d 754, 762 (1st Cir.1987).
 
 
 11
 Huggins maintains that there was no evidence other than Rawlings's taped conversations to show that a conspiracy existed. How ever, the Government produced evidence that Huggins visited Rawlings on September 20, 1992. Further, Dorsey testified that Rawlings asked her to bring Huggins to the prison because Huggins "was posed [sic] to be bringing [him] some stuff." Thus, a preponderance of the evidence demonstrated that a conspiracy existed, and the taped conversations were properly admitted into evidence under Rule 801(d)(2)(E).[3]
 
 
 12
 Finally, a joint conspirator is considered as a co-conspirator for the purposes of Rule 801(d)(2)(E) even though no conspiracy has been charged. United States v. Rinaldi, 393 F.2d 97, 99 (2d Cir.), cert. denied, 393 U.S. 913 (1968). Thus, Huggins's contention that Rule 801 does not apply because he was not charged with conspiracy lacks merit.
 
 
 13
 Huggins next contends that the evidence was insufficient to sustain a guilty verdict. We will only disturb a verdict if no rational jury could have found that the prosecution proved the crime charged beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942). In making that assessment, we view the evidence and all reasonable inferences in the light most favorable to the Government. United States v. Jones, 735 F.2d 785, 790 (4th Cir.), cert. denied, 469 U.S. 918 (1984). We must consider circumstantial and direct evidence and allow the Government to benefit from all reasonable inferences from facts sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982).
 
 
 14
 The Government was required to show that Huggins knowingly provided or attempted to provide a prison inmate with an object that was prohibited by statute, rule, or order. 18 U.S.C. Sec. 1791. The Government may prove its case by direct or circumstantial evidence; circumstantial evidence is no less probative than direct evidence. United States v. DeCorte, 851 F.2d 948, 954 (7th Cir.1988).
 
 
 15
 The Government established that Rawlings contacted Huggins by phone one day prior to the visit to confirm that Huggins and Dorsey were still planning to visit the prison. Rawlings also spoke with another man, and told that man to inform Huggins not to cut "it" and that "it" should be gift wrapped. The two men also discussed the number of "shirts" that Huggins would bring with him. The references to "it" and "shirts" undoubtedly were code words for heroin.
 
 
 16
 Furthermore, the jury heard conflicting evidence as to whether Huggins and Rawlings made physical contact during the visit. Dorsey first testified that Huggins and Rawlings shook hands when they greeted each other and that the two men walked off together to confer privately for fifteen minutes. On cross examination, however, Dorsey stated that she did not see Huggins touch Rawlings. Issues of credibility were for the jury to determine. Burks v. United States, 437 U.S. 1, 16 (1978).
 
 
 17
 Moreover, a prison official testified that on the day of the visit, more than one hundred people were present in the visiting room. Only three officers monitored the inmates. The heroin was one-half inch long and wrapped in plastic. Thus, a rational trier of fact could find that Huggins could easily have passed the small package to Rawlings.
 
 
 18
 Next, the Government had to prove that the object was prohibited by statute. The object found on Rawlings was 0.195 grams of 87% pure heroin hydrochloride, which is a Schedule I narcotic controlled substance as listed in 21 U.S.C.A. Sec. 812 (West 1981 & Supp.1994). Therefore, the object was contraband.
 
 
 19
 Finally, the Government demonstrated that one day prior to visiting Rawlings, Huggins talked with Rawlings by phone and discussed the "stuff" he was to bring to the prison and how to cut and package it. This discounts any allegation by Huggins that he did not knowingly provide the prohibited item to Rawlings. Because the Government proved the elements of the crime charged beyond a reasonable doubt, we affirm the judgment of conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 
 [1]
 Rawlings is the father of Dorsey's child
 
 
 [2]
 During a contact visit, an inmate is allowed to have contact twice, once when the visitor arrives and once when the visitor leaves
 
 
 [3]
 Furthermore, contrary to Huggins's assertions, the conspiracy did not end once the contraband passed from Huggins to Rawlings. The "in furtherance" language of Rule 801(d)(2)(E) is satisfied when a co-conspirator is apprised of the progress of the conspiracy, or when the statements are designed to induce his assistance. United States v. Perez, 702 F.2d 33, 37 (2d Cir.), cert. denied, 462 U.S. 1108 (1983). Thus, when Rawlings contacted Huggins two days after the incident and advised Huggins to be "cool," he was acting in furtherance of the conspiracy