UNITED STATES of America, Plaintiff,

v.

Ruben Dario ROGERS, a/k/a "Ruben Dario Rogers Joseph," a/k/a "Jose Salas," Defendant.

No. 95 Crim. 180 (LAK).

United States District Court, S.D. New York.

Sept. 19, 1995.

Evan T. Barr, Assistant United States Attorney, Mary Jo White, United States Attorney, for Plaintiff.

Michael M. Milner, New York City, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The indictment in this case charges the defendant with two counts of making false statements under oath in a petition for naturalization, in violation of 18 U.S.C. § 1015(a), and two counts of procuring naturalization contrary to law, in violation of 18 U.S.C. § 1425(a). Defendant now moves, on the eve of trial, to dismiss the indictment on the grounds that (1) the false statement counts fail to state an offense in that they fail to allege that the alleged false statements were material, and (2) the Section 1015(a) counts charge the same conduct as the Section 1425(a) counts and therefore are multiplicitous.

*Facts*

Count 1 of the indictment charges that the defendant violated Section 1425(a) by attempting, on or about July 24, 1990, to procure naturalization contrary to law in that "in an application to file a petition for naturalization he falsely stated under oath that he had never been arrested or convicted for violating any law." Count 3 charges that he violated Section 1015(a) in that on or about July 24, 1990 he knowingly made a false statement under oath in a matter relating to naturalization, "to wit, in an application to file a petition for naturalization he falsely stated under oath than he had never been arrested or convicted for violating any law." Counts 2 and 4 are precisely parallel except that they refer to false statements allegedly made on or about April 16, 1991. Thus, the conduct allegedly forming the basis for each Section 1015(a) count is identical to that forming the basis for the corresponding Section 1425(a) count.

*Discussion*

*Materiality*

 Defendant moves to dismiss Counts 1 and 2, the Section 1425(a) charges, on the theory that they fail to allege an offense. The argument is this: In order to be "contrary to law," a false statement used in an effort to procure naturalization must be material. *United States v. Puerta*, 982 F.2d 1297 (9th Cir.1992). Willful omission of a criminal record, without more, does not establish illegal procurement of naturalization. *Chaunt v. United States*, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960). Hence, the allegation that defendant falsely stated that he had no criminal record does not suffice to charge a violation of Section 1425(a) because there is no allegation of materiality. The argument, although creative, is without merit.

---

**1.** Section 1425(a) provides that "Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or citizenship ..." is guilty of an offense.

**2.** *United States v. Elkin*, 731 F.2d 1005, 1009 (2d Cir.), *cert. denied*, 469 U.S. 822, 105 S.Ct. 97, 83

---

The linchpin of defendant's argument is *Puerta* and its holding that an attempt to procure naturalization by means of a false statement is "contrary to law," and thus a violation of Section 1425(a),[1] only if the false statement is material. But *Puerta* is unpersuasive, particularly given the established law of this circuit on an analogous point.

To begin with, Section 1425(a), unlike the perjury statute, 18 U.S.C. § 1623, does not contain an express requirement of materiality. As the Second Circuit has said, "it is of doubtful wisdom, not to say potentially dangerous, to import conditions into a penal statute which appear to have been studiously omitted by the lawmakers themselves." *United States v. Silver*, 235 F.2d 375, 377 (2d Cir.), *cert. denied*, 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 80 (1956). Moreover, in view of the Second Circuit's repeated holdings that materiality is not an element of the false statement offense under 18 U.S.C. § 1001,[2] a false statement to a federal officer or agency may be "contrary to law" irrespective of its materiality, contrary to the premise of *Puerta*. And there is nothing incongruous in such a holding. As the *Silver* panel explained:

"[T]here is properly a distinction between a scheme of concealing or covering up a 'material fact' and the making of a false, fictitious, or fraudulent statement. An attempt to conceal or cover up may properly be limited only to facts which are important and material. On the other hand, a fact deliberately or willfully misstated in a matter of appropriate governmental inquiry seems properly punishable even if it is only a gratuitous red herring. As such it can of course obstruct, delay, or deflect an inquiry which is pressing home to uncover fraud upon the government." 235 F.2d at 377.

The reasoning of *Silver* seems quite applicable here. While the defendant's alleged actions might be characterized either as cov-

---

L.Ed.2d 43 (1984); *United States v. Rinaldi*, 393 F.2d 97, 100 (2d Cir.), *cert. denied*, 393 U.S. 913, 89 S.Ct. 233, 21 L.Ed.2d 198 (1968); *United States v. Marchisio*, 344 F.2d 653, 666 (2d Cir. 1965); *United States v. Silver*, 235 F.2d 375, 377–78.

ering up his prior criminal record or as an affirmative misstatement, and of course they were both, the fundamental point is that their effect and alleged purpose was to deflect the Immigration and Naturalization Service from learning the facts concerning his background, which was a matter of appropriate governmental inquiry. It is not an answer to say that the facts thus hidden from view, if revealed, would not necessarily have resulted in the denial of naturalization. It is enough that there is every reason to believe that Congress, in omitting a requirement of materiality in Section 1425(a), sought to punish such behavior and, in consequence, no reason for the courts to limit the statute.[3]

Accordingly, the motion to dismiss Counts 1 and 2 is denied.

*Multiplicity*

■ "An indictment is multiplicitous when a single offense is alleged in more than one count." *United States v. Nakashian*, 820 F.2d 549, 552 (2d Cir.), *cert. denied*, 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 392 (1987) (*citing United States v. Israelski*, 597 F.2d 22, 24 (2d Cir.1979)). The multiplicity doctrine is based on the Double Jeopardy Clause, and its purpose is to ensure that the court does not impose multiple punishment for the same offense contrary to congressional intent. *Id.*

■ In order to determine whether Congress intended to authorize multiple punishment for conduct that violates two statutes, the Court applies a three-pronged test. The initial inquiry is whether the offenses charged are set forth in different statutes or sections of a statute, each unambiguously prescribing punishment for its violation. The second is "whether the two offenses are sufficiently distinguishable from one another

that the inference that Congress intended to authorize multiple punishments is a reasonable one," [4] a determination made in accordance with *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Finally, if *Blockburger* is satisfied, the Court must test the provisional conclusion that Congress intended multiple punishment against any available legislative history. *Nakashian*, 820 F.2d at 551 (*citing Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)); *United States v. Marrale*, 695 F.2d 658 (2d Cir.1982), *cert. denied*, 460 U.S. 1041, 103 S.Ct. 1434, 75 L.Ed.2d 793, 460 U.S. 1041, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983).

The first prong of the standard plainly is met. The conduct alleged falls within two distinct statutes, each of which specifically provides for punishment for its violation.

The *Blockburger* prong of the analysis looks to whether the two statutes in fact define different crimes. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182.

Section 1015(a) provides:

"Whoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens ..."

is guilty of an offense. The elements therefore are a (1) knowing (2) false statement (3) under oath (4) in any proceeding, or matter

---

**3.** Another difficulty with *Puerta* is its assumption that the phrase "contrary to law" in Section 1425(a) refers to violations of the Immigration and Nationality Act, a premise from which it concludes that the pertinent analogy is to the standard for denaturalization based on false statements or concealment, a standard under which materiality is required. 982 F.2d at 1300–01. *Puerta* cites no authority for the proposition

that the "law" to which Section 1425(a) refers is the immigration law, and this Court is aware of none. Moreover, there is no basis to suppose that Congress did not intentionally punish false statements used in efforts to procure naturalization irrespective of materiality while at the same time requiring proof of materiality to strip someone of citizenship.

**4.** *Nakashian*, 820 F.2d at 551.

relating to, naturalization, citizenship or registry of aliens.[5]

Section 1425(a) provides:

"Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or citizenship ..."

is guilty of an offense. The elements of this offense thus are (1) knowing (2) procurement or attempted procurement, of (3) naturalization or evidence of naturalization or citizenship.

These statutes are not entirely congruent. Section 1425(a), for example, does not require the making of a false statement under oath. And while it seems likely that a false statement under oath relating to naturalization or citizenship would constitute a knowing attempt to procure naturalization or evidence of naturalization or citizenship, it is not self-evident that would be so in every case. Thus, the controlling question under *Blockburger,* for purposes of this case, is whether the Court may look beyond the statutes to the indictment itself, as the defendant urges.

It seems clear in light of *Whalen v. United States,* 445 U.S. 684, 694, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980), and *United States v. Seda,* 978 F.2d 779 (2d Cir.1992), that the Court is not restricted to the statutes in all cases. In *Whalen,* the Supreme Court held that a rape charge and a felony murder charge based on the death of the rape victim did not charge separate offenses despite the fact that felony murder often may be proved by conduct wholly unrelated to a rape. And in *Seda,* the Second Circuit held that charges of bank fraud and the making of a false loan application did not allege separate offenses where the means by which the bank fraud allegedly was committed was the false loan application. In consequence, these cases, particularly *Seda,* strongly support the defendant's position.

The government seeks to distinguish *Seda* on the ground that it permits the Court to go beyond the terms of the statutes in applying *Blockburger* only where one of the statutes at issue covers a broad range of conduct. It correctly summarizes the language of *Seda.* But the point nonetheless is without merit. Section 1344 of Title 18, the statute characterized as broad by the *Seda* panel, proscribes the perpetration of fraud on federally chartered or insured financial institutions. It is no broader than Section 1425(a), which proscribes all knowing procurement and attempts at procurement of naturalization or evidence of naturalization or citizenship contrary to law. Indeed, Section 1425(a) seems the broader of the two. In consequence, *Seda* requires this Court to consider not only the terms of the statutes at issue here, but also the specific conduct alleged in the indictment to have violated each. As that conduct is identical, this analysis indicates that the indictment is multiplicitous, as the same conduct is charged in more than one count notwithstanding that the two statutes are capable of defining separate offenses.

There is one final point worthy of mention although it has been raised directly by neither side. As noted in the discussion of *Puerta,* Section 1425(a) punishes procurement and attempted procurement of naturalization "contrary to law." Unlike any of the statutes involved in the cases discussed above, therefore, it contemplates punishment for conduct which, by definition, is subject to punishment as well under another law. The significance of this fact, however, is not clear. The circumstances in which the procurement of naturalization might be "contrary to law" seem quite broad, and the number of statutes possibly violated by conduct so rendering it also is substantial. While the use of this phrase in Section 1425(a) might evidence a Congressional determination to impose multiple punishment in all such cases, other explanations are possible. Perhaps Congress intended only that Section 1425(a) serve the purpose of insuring that any illegal conduct in connection with the procurement of natu-

5. There is little authority, and none in this Circuit, as to whether materiality is an element of the offense under Section 1015(a). The Sixth Circuit has held, albeit in an unpublished opinion, that it is not. *United States v. Tongo,* No. 93–5326, 1994 WL 33967, 1994 U.S.App. LEXIS 2136 (6th Cir.1994). As Section 1015(a) is virtually identical to 18 U.S.C. § 1001, this Court concludes that materiality is not an element of the offense for the reasons discussed in the text with respect to Section 1425(a).

ralization constitute a federal crime even where the conduct was rendered unlawful by state law. Perhaps it intended that Section 1425(a) be used to impose penalties more severe than might be available under whatever statute, federal or state, rendered the conduct involved in the procurement unlawful. The scanty legislative history sheds no light on the purpose, however. It therefore suffices to say that the available evidence is insufficient to rebut the presumption "that Congress does not intend to punish the same offense under different statutes." *United States v. Avelino,* 967 F.2d 815, 816 (2d Cir. 1992). In consequence, the Court holds that this indictment is multiplicitous.

■ The question that remains is the remedy. *Seda* affirmed an order requiring the government to elect between the multiplicitous counts prior to trial. It nevertheless acknowledged that an election prior to submission of the case to the jury or a lesser included offense instruction might be appropriate in other circumstances, albeit without indicating what such circumstances might be. Here the proof that will be offered will not be affected, much less materially so, by a requirement of a pretrial election. The defendant has waived his right to a jury, so any risk of jury confusion has been eliminated. The trial is expected to be brief. In consequence, the Court sees no reason to put the government to a choice prior to trial and no benefit to the defendant in doing so. Accordingly, the government shall elect between counts 1 and 3 and between counts 2 and 4 prior to the Court making its finding as to guilt.

### Conclusion

The motion to dismiss the indictment is denied. The government, however, shall elect between counts 1 and 3 and between counts 2 and 4 prior to the Court making its finding as to guilt.

SO ORDERED.