**UNITED STATES of America**

v.

**Haydar Badawi SADIG**

**No. CRIM. 3:03CR62.**

United States District Court,
W.D. North Carolina.
Charlotte Division.

Jan. 14, 2005.

Anthony G. Scheer, Rawls, Dickinson & Scheer, Charlotte, NC, for Defendant.

Jack M. Knight, U.S. Attorney's Office, Charlotte, NC, for Plaintiff.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendant's motion for a new trial which is opposed by the Government.

## I. BACKGROUND

On August 2, 2000, the Defendant, who is from Sudan, completed form N–400, Application for Naturalization, which was received in Dallas, Texas, on August 10, 2000. Transcript of Excerpted Testimony of Charles Cross, Regina Bryant, Scott Sherrill before the Honorable H. Brent McKnight on May 21 and 24, 2004, filed July 5, 2004, at 138, 187. On November 14, 2000, the Defendant was arrested at the Charlotte–Douglas International Airport when British Airways Flight # 2007 landed from London, England. Criminal Complaint, filed November 15, 2000, in *United States v. Sadig,* Criminal No. 3:00m255. On December 5, 2000, the Defendant was indicted by a federal grand jury with four counts of assaulting flight attendants during that flight. Bill of Indictment, filed December 5, 2000, in *United States v. Sadig,* Criminal Case No. 3:00cr232. That indictment charged that the Defendant physically assaulted three different flight attendants, one of whom he hit with his closed fist during the flight. Complaint, *supra.* After his arrest on these charges, the Defendant was charged, indicted and temporarily detained for about one month before his attorney obtained his pretrial release on conditions of bond. Transcript, *supra,* at 179–80.

On August 7, 2001, the Defendant attended a naturalization interview in Charlotte, North Carolina, with Regina Bryant, who at that time was an agent with the Immigration and Naturalization Service.[1] *Id.,* at 128. Bryant went over the Defendant's application form N–400 with him during this interview and asked him to verify his answers to each question on the application. *Id.,* at 128–33. She corrected any answer that was either not accurate or which had changed during the period August 2000 and August 2001. *Id.* For example, at the time the Defendant filled out the application in August 2000, he had two children, but subsequently, a third child had been born and the agent corrected that information on the actual form. *Id.* She specifically asked the Defendant about question number 15 on the form: " 'Have you ever, in this country or any other country, in other words, since you have been born, have you ever been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance, excluding traffic violations?'" *Id.,* at 135. When Bryant asked the Defendant that question, he responded, "No." *Id.* Prior to going over this form with the Defendant, Bryant had placed him under oath. *Id.,* at 125, 139. And, at the end of the interview, she showed him the corrections made to the application and asked him to read the corrections and to sign the form if he agreed with the corrections. *Id.,* at 138–39. The actual question answered by the Defendant in this regard read: "The amended application is true to the best of my knowledge and belief." *Id.,* at 139–40. The Defendant signed the application in her presence and she witnessed and dated his signature. *Id.,* at 140–41.

---

1. That agency was subsequently merged into the United States Department of Homeland Security.

On August 24, 2001, the Defendant's plea agreement with the Government in Criminal Case No. 3:00cr232 was filed. Plea Agreement, filed August 24, 2001, in Criminal Case No. 3:00cr232. In that agreement, he agreed to plead guilty to three counts of assault on flight attendants in violation of federal law. *Id.* The Defendant entered this plea of guilty in court on September 6, 2001. The Defendant became a United States citizen on September 28, 2001, in Charlotte, North Carolina. Transcript, *supra,* at 182. On November 26, 2001, he was sentenced to four years of probation in connection with the assault charges.

Special Agent John Sherrill of the U.S. Immigration and Customs Enforcement had occasion in early 2003 to investigate the Defendant. *Id.,* at 171. After speaking with Agent Bryant and reviewing the application form N–400, Agent Sherrill realized that the Defendant had failed to disclose his interim arrest to Agent Bryant. *Id.,* at 178–83. In fact, Agent Sherrill arrested the Defendant on the charges in this case and interviewed him. *Id.* During that interview, the Defendant told Agent Sherrill repeatedly that Agent Bryant did not ask him any questions about an arrest during his naturalization interview. *Id.,* at 183. The Defendant also claimed that because he had entered into a plea agreement with the Government, it was not a conviction which he was required to disclose to the agent. *Id.,* at 184.

On April 29, 2003, the Defendant was charged in Count One of the indictment in this case with knowingly making a false statement under oath concerning citizenship, in violation of 18 U.S.C. § 1015(a); in Count Two with knowingly making a materially false statement, in violation of 18 U.S.C. § 1001(a)(2); and in Count Three with knowingly attempting to procure citizenship contrary to law, in violation of 18

U.S.C. § 1425(a). Bill of Indictment, filed April 29, 2003. The Defendant testified during his trial that Agent Bryant did not ask him about an intervening arrest at his naturalization interview. He also testified that he did not understand that by signing the affirmation after his interview was completed that he was stating under oath that the application was correct. The jury acquitted the Defendant of Counts One and Two but convicted him of Count Three. Verdict Sheet, filed May 26, 2004.

## II. STANDARD OF REVIEW

█ In the Defendant's motion for a new trial, he claims the following errors: (1) the jury returned inconsistent verdicts, thus making it impossible to ascertain of which act the jury found the Defendant guilty; (2) the Government erroneously shifted the burden of proof and argued to the jury that the Defendant had a duty to volunteer the information about his intervening arrest; (3) the Court erroneously refused to charge the jury that he had no such duty; and (4) the verdict of guilty on Count Three is not supported by substantial evidence.

> Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, a court may, on a motion by the defendant, grant a new trial "if the interest of justice so requires." . . . [A]ssuming the verdict was inconsistent, "a defendant cannot challenge his conviction merely because it is inconsistent with a jury's verdict of acquittal on another count."

*United States v. Perry,* 335 F.3d 316, 322 (4th Cir.2003), *cert. denied,* 540 U.S. 1185, 124 S.Ct. 1408, 158 L.Ed.2d 91 (2004) (quoting *United States v. Thomas,* 900 F.2d 37, 40 (4th Cir.1990)). As to the Defendant's claims that the jury was erroneously charged, the jury instructions and verdict sheet are viewed as a whole in order to ascertain whether the jury con-

victed a defendant of a charge different than that contained in the indictment. *Id.,* at 322–23.

As for the Defendant's claim that the verdict is against the weight of the evidence,

> [i]n reviewing the sufficiency of evidence in a criminal case, a guilty verdict must be upheld if there is substantial evidence, taking the view most favorable to the prosecution, to support it. In conducting such an inquiry, [this Court] may not "weigh the evidence or review the credibility of the witnesses." And, where the evidence supports differing reasonable interpretations, "the jury decides which interpretation to believe." . . . [As for the] denial of a motion for a new trial[,] . . . a court "should exercise its discretion to grant a new trial sparingly," and . . . it should do so "only when the evidence weighs heavily against the verdict."

*Id.,* at 320 (quoting *United States v. Wilson,* 118 F.3d 228, 234, 237 (4th Cir.1997)) (other citations omitted).

## III. DISCUSSION

The crux of the Defendant's motion is his claim that because the jury found him not guilty of Counts One and Two, they should have likewise found him guilty of Count Three. This argument, however, is based on the Defendant's assumption that the jury considered the same behavior to have been the conduct involved in each of the three counts.

■ The jury acquitted the Defendant of Count One which charged him with knowingly making a false statement under oath in any matter relating to naturalization during his interview on August 7, 2001, in violation of 18 U.S.C. § 1015(a). The elements of this offense are (1) the knowingly making; (2) of a false statement; (3) under oath; (4) related to naturalization. *United States v. Rogers,* 898 F.Supp. 219, 221–22 (S.D.N.Y.1995). It is not an element of this crime that the false statement be material. *United States v. Abuagla,* 336 F.3d 277, 278–79 (4th Cir. 2003). The Defendant testified that Agent Bryant did not ask him if he had been arrested since the date he first completed his application and, as a result, he did not volunteer the information. He further testified that he did not understand that by signing the affirmation, he was asserting that the application was correct. The jury's acquittal on this count indicates that it believed the Defendant's testimony.

■ The jury also acquitted the Defendant of Count Two which charged him with knowingly and willfully making a materially false statement in a matter within the jurisdiction of the United States during his August 7, 2001, interview, in violation of 18 U.S.C. § 1001(a)(2). The elements of this offense are (1) the Defendant knowingly made a false statement to the governmental agency; (2) the Defendant acted willfully in doing so; (3) the statement was made in a matter within the jurisdiction of the United States; and (4) the statement was material to the governmental agency. *United States v. Camper,* 384 F.3d 1073, 1075 (9th Cir.2004). The fact that the jury acquitted the Defendant of this count as well shows that they accepted his testimony.

■ However, the jury convicted the Defendant of Count Three which charged him with knowingly procuring naturalization "contrary to law," in violation 18 U.S.C. § 1425(a). The Defendant argues that because he was acquitted of the two charges involving false statements, he could not be convicted of knowingly procuring naturalization "contrary to law." The statute at issue provides that "[w]hoever knowingly procures . . . contrary to law, the naturalization of any person" is guilty of an offense against the United

States. 18 U.S.C. § 1425(a). "The statute does not define 'contrary to law,' but the phrase has been interpreted to be the law governing naturalization." *United States v. Agunbiade,* 172 F.3d 864, 1999 WL 26937 *2 (4th Cir.1999).

> In order to be naturalized, an applicant must demonstrate that he ... satisfies the numerous criteria of the Immigration and Naturalization Act. The relevant criteria in this case require that the applicant has continuously resided in the United States for five years after being lawfully admitted for permanent residence, and that the applicant "has been and still is a person of good moral character" during that time. 8 U.S.C. § 1427(a).

*United States v. Puerta,* 982 F.2d 1297, 1301 (9th Cir.1992) (footnote omitted); *accord, United States v. Rogers,* 104 F.3d 355, 1996 WL 685759, at *1 (2d Cir.1996); *United States v. Aladekoba,* 61 Fed.Appx. 27 (4th Cir.2003). The fact that the Defendant here had been arrested and indicted for four separate charges at the time of his interview would certainly have called into question his "good moral character." *Id.; Puerta, supra; Rogers, supra.* Agent Bryant testified at trial that had she been aware of the intervening arrest and indictment, "these facts would have been a 'red flag' that would have prevented the grant of naturalization at least until the arrest and [indictment] were satisfactorily explained." *Aladekoba, supra,* at 28. Thus, contrary to the Defendant's arguments in his motion, the conduct of which he was convicted in Count Three was distinguishable from the conduct of which he was acquitted in Counts One and Two. "These statutes are not entirely congruent. Section 1425(a), for example, does not require the making of a false statement under oath." *Rogers,* 898 F.Supp. at 222. Section 1425(a) is broader in its scope than the other two statutes. *Id.*

Defendant also argues that he was illegally convicted of Count Three because the Government argued to and convinced the jury that he had a duty to volunteer the information about his intervening arrest. No such duty exists, he argues, and thus, he claims the Government improperly shifted the burden of proof to the Defendant. However,

> liability under § 1425 requires proof that [the Defendant] either knew he was not eligible for naturalization due to his prior conviction, or knowingly misstated his criminal record on his application or in his interview.
>
> \* \* \* \* \* \*
>
> [T]he requisite intent element of § 1425 can be established by proof that (1) [Sadig] knowingly misrepresented his criminal record at his interview; (2) he knowingly misstated his criminal record in his written application; or (3) regardless of his representations to the INS, he knew he was ineligible for naturalization.

*United States v. Pasillas–Gaytan,* 192 F.3d 864, 868, 870 (9th Cir.1999) (footnote omitted). The Defendant testified that he knew if he were asked about his arrest he was under an obligation to disclose it to the agent. His entire defense was that because she did not ask him, he did not disclose the information. This testimony establishes that he knew his intervening arrest and indictment made him ineligible for naturalization. *Id.; accord, United States v. Nicaragua–Rodriguez,* 165 F.3d 21, 1998 WL 738548 *1–2 (4th Cir.1998) ("Nicaragua–Rodriguez submitted a written application for naturalization as a United States citizen in August 1994. Approximately one month later, she was arrested, taken into custody, and released on bond for a Virginia state charge of malicious wounding with intent to maim. Two months later, [she] had an interview with an [INS] examiner. She attested to the

facts in her application and represented orally and by written statement that she had never been arrested.... The Government was not required to prove that [she] was legally arrested or that the shooting she was arrested and indicted for was unjustified. The Government needed only to prove the fact that [she] knowingly concealed the arrest and indictment.").

The undersigned, therefore, rejects each argument raised by the Defendant and finds that the motion for a new trial should be denied.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for a new trial is hereby **DENIED.**