**UNITED STATES of America**

v.

**Soliman S. BIHEIRI**

**No. CR.A. 03–365–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 2, 2003.

Gordon D. Kromberg, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

James Clyde Clark, Land, Clark, Carroll & Mendelson P.C., Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue in this naturalization fraud case is whether 18 U.S.C. § 1425(a), which criminalizes knowing procurement of naturalization "contrary to law," requires materiality when the predicate crime is a violation of 18 U.S.C. § 1015 for knowingly making a false statement under oath "in any case, proceeding, or matter relating to ... naturalization, citizenship, or registry of aliens." 18 U.S.C. § 1015(a).

## I.

Defendant was tried by jury on two counts of a three count indictment.[1] Count 1 of the indictment alleged a violation of 18 U.S.C. § 1425(a) for defendant's procurement of his own naturalization contrary to law by making certain false statements in an Application for Naturalization (Form N–400) submitted on March 15, 1999 and sworn to by defendant on August 21, 2000. Specifically, the government alleged that defendant made two false statements on his Application for Naturalization: (1) At Part 3 of his Application, under the heading "Absences from the U.S.," defendant stated that he had been absent from the United States only once in the five years preceding his Application, when in fact he had been absent sixteen times during the preceding five years; and (2) at Part 7 of his Application, defendant stated he had not knowingly committed a crime for which he had not been arrested, when in fact he (i) knowingly made certain false statements concerning his prospective employer and work experience in an Application for Alien Employment Certification on August 8, 1991, (ii) knowingly used a false writing containing materially false statements regarding his prospective employer and the position being offered to him in support his Second Preference Petition (Form I–140) on April 2, 1993, and (iii) knowingly submitted his materially false Application for Alien Employment Certification and Second Preference Petition in support of his Application for Immigrant Visa and Alien Registration to the American Embassy in Bern, Switzerland on December 21, 1993, but was never arrested for any of these false statements, which were made in violation of 18 U.S.C.

---

1. The government's motion to dismiss Count 2 of the indictment alleging a violation of 18 U.S.C. § 1001(a)(2) was granted prior to the submission of the case to the jury.

§§ 1001(a) and 1015(a). Count 3 of the indictment independently alleged a violation of 18 U.S.C. § 1015(a) for defendant's swearing to the false statements made in his Application for Naturalization on August 21, 2000 before an Immigration and Naturalization Service district adjudications officer. A unanimous jury found defendant guilty on both counts.

This memorandum opinion states the reasons for the bench ruling on the question whether materiality is required under 18 U.S.C. § 1425(a) for false statements made in violation of 18 U.S.C. § 1015(a).

## II.

Statutory interpretation "begin[s] with the language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). Courts must first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). The "inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson*, 519 U.S. at 340, 117 S.Ct. 843; *see also United States v. Abuagla*, 336 F.3d 277, 278 (4th Cir.2003). Section 1425 of Title 18 provides in relevant part that "[w]hoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person ... shall be fined under this title or imprisoned ...." 18 U.S.C. § 1425. The phrase "contrary to law" is not defined in the statute, but its meaning is clear and unambiguous. "Contrary to law" must include "contrary to 18 U.S.C. § 1015," which, under Fourth Cir-

cuit precedent, criminalizes even non-material false statements made under oath in any case, proceeding, or matter relating to naturalization, citizenship, or registry of aliens. *See Abuagla*, 336 F.3d at 278.

At trial, defendant argued that § 1425(a) requires that false statements made to procure naturalization be material in order to be "contrary to law" in part because a conviction under § 1425 results in compulsory and immediate loss of United States citizenship. In support of this argument, defendant relied on *United States v. Puerta*, in which the Ninth Circuit addressed the precise materiality question presented here and reached a contrary result. The Ninth Circuit panel first noted that a separate civil statute, 8 U.S.C. § 1451(a), "permits denaturalization if citizenship was 'procured by concealment of a *material* fact or by willful misrepresentation.'" 982 F.2d 1297, 1301 (9th Cir.1992) (emphasis in original). The panel therefore looked "to the standards governing materiality in the denaturalization context as a guide to determining what is 'contrary to law' under 18 U.S.C. § 1425" and concluded that Congress did not make immaterial false statements in naturalization proceedings a crime through § 1425. *Id.; see also id.* at 1302.

*Puerta* is of no avail to defendant; its reasoning and result are unpersuasive in light of recent Fourth Circuit precedent squarely holding that materiality is not an element of the crime of knowingly making a false statement under oath in a naturalization proceeding under 18 U.S.C. § 1015(a). *See Abuagla*, 336 F.3d at 278. By its terms, § 1015(a) is undoubtedly a law relating to naturalization;[2] therefore

---

2. Section 1015(a) provides that
   Whoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue

of any law of the United States relating to naturalization, citizenship, or registry of aliens ... [s]hall be fined under this title or

if an alien procures his naturalization by violating § 1015(a), such procurement is "contrary to law" and can thus serve as a predicate violation for conviction under § 1425(a). Because the Fourth Circuit has clearly held that § 1015(a) does not require materiality, only one logical conclusion can be reached: § 1425(a) also does not require materiality. To conclude otherwise would necessitate an absurd reading of § 1425(a)'s language that would essentially read "contrary to law" as "contrary to law, with the exception of 18 U.S.C. § 1015(a)." There is no textual warrant for such a reading. To the contrary, the clear and unambiguous language of § 1425(a) cannot support such a result. *See Abuagla,* 336 F.3d at 279 ("Because the statutory language is clear, our inquiry is finished."). Nowhere in § 1425 is materiality mentioned; nor does the phrase "contrary to law" have a common law meaning that requires materiality. As a result, "contrary to law" in § 1425(a) necessarily includes "contrary to 18 U.S.C. § 1015(a)," from which it follows that materiality is not required to establish a violation of § 1425(a). *See id.*

While the absence of a materiality requirement in § 1425(a) may indeed lead to imposition of the harsh and severe consequence of denaturalization for minor, immaterial misstatements,[3] a contrary result cannot be reached without flatly ignoring the binding precedent of *Abuagla* or reading words into a statute that simply are not there. Any limitation on the broad reach of § 1425(a) must therefore come from Congress, not the courts. *See Brogan v. U.S.,* 522 U.S. 398, 408, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998) ("Courts may not create their own limitations on legislation, no matter how alluring the policy arguments for doing so, and no matter how widely the blame may be spread.").

---

imprisoned not more than five years, or both.
18   U.S.C. § 1015(a).

**3.** For example, the Form N–400 Application for Naturalization asks applicants whether they have ever committed a crime for which they have not been arrested. If an applicant answers "no" knowing that while in college, he drank a beer at a fraternity party before his 21st birthday, under *Abuagla,* he would be in violation of § 1015(a). As such, this violation could serve as a predicate for conviction, and thus mandatory loss of citizenship, under § 1425(a). It may very well be that Congress never intended such a result or, more likely, simply never contemplated this possibility. In this respect, both §§ 1425(a) and 1015(a) differ significantly from 18 U.S.C. § 1014, the statute at issue in *United States v. Wells,* 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997). In *Wells,* the Supreme Court held that § 1014, which prohibits knowingly making false statements in loan applications to

financial institutions for the purpose of influencing those institutions, did not include a materiality requirement, noting that a "statement made 'for the purpose of influencing' a bank will not usually be about something a banker would regard as trivial." 519 U.S. at 499, 117 S.Ct. 921. Therefore, while § 1014 does not require materiality, its very language provides a mechanism to ensure that trivial and immaterial false statements do not result in conviction under the statute. Section 1425 includes no such language. As a policy matter, it may indeed be unwise to leave unchecked discretion in the hands of the executive branch to pursue prosecution for minor, immaterial misstatements under § 1425(a). This question, however, is for Congress to consider and decide. The plain language of § 1425(a), coupled with the Fourth Circuit's holding in *Abuagla,* cannot properly lead to any other result.